1    FRANCIS M. GREGOREK (144785)
     gregorek@whafh.com
2    BETSY C. MANIFOLD (182450)
     manifold@whafh.com
3    RACHELE R. RICKERT (190634)
     rickert@whafh.com
4    PATRICK H. MORAN (270881)
     moran@whafh.com
5    WOLF HALDENSTEIN ADLER
        FREEMAN & HERZ LLP
6    750 B Street, Suite 2770
     San Diego, CA 92101
7    Telephone:    619/239-4599
     Facsimile:    619/234-4599
8

9    Attorneys for Plaintiffs

10    [Additional Counsel Appear on Signature Page]

**E-filing**

**FILED**
2011 APR -4 P 2:28
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**PSG**

11

12          **UNITED STATES DISTRICT COURT**

13          **NORTHERN DISTRICT OF CALIFORNIA**

14          **SAN JOSE DIVISION**

**CV 11      1629**

15    Meghan Mollett and Tracy Hellwig,    )   Case No.
     individually, on behalf of themselves and all   )
16    others similarly situated,           )
                                    )
17               Plaintiffs,      )   **CLASS ACTION COMPLAINT FOR**
                                    )   **VIOLATIONS OF:**
18                                     )   **1. THE VIDEO PRIVACY PROTECTION**
   vs.                                  )      **ACT, 18 U.S.C. § 2710 *et seq.*; AND**
19                                     )   **2. CALIFORNIA CIVIL CODE § 1799.3**
   NETFLIX, INC., a Delaware corporation,    )
20                                     )   **JURY TRIAL DEMANDED**
              Defendant(s).      )
21                                     )

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT FOR VIOLATIONS OF: 1. THE VIDEO PRIVACY PROTECTION ACT, 18
U.S.C. § 2710 *et seq.*; AND 2. CALIFORNIA CIVIL CODE § 1799.3

Plaintiffs, Meghan Mollett and Tracy Hellwig, on behalf of themselves and all others similarly situated (the "Class", defined below), bring this action for violations of the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.* (the "VPPA") and California Civil Code § 1799.3 against Netflix, Inc. ("Netflix"). Plaintiffs make the following allegations on information and belief, except as to those paragraphs that pertain to Plaintiffs, which are based on personal knowledge. Plaintiffs' allegations made on information and belief are based upon, *inter alia*, the investigation conducted by their attorneys.

## NATURE OF THE CLAIM

1.      This is a nationwide class action brought against Netflix for violations of the VPPA, 18 U.S.C. § 2710 *et seq.* and  California Civil Code § 1799.3 on behalf of a class of all persons in the United States who subscribed to Netflix's services and streamed Netflix videos from the Internet through any Netflix ready device including, but not limited to, the XBox 360, Nintendo Wii and PlayStation 3 video game consoles, the Roku set top box, Netflix ready televisions, and/or any Netflix ready DVR, DVD or Blue-ray player at any time from two years prior to the date of the filing of this Complaint through the present.

2.      Netflix currently provides movies and other video content to its subscribers in two ways: (1) by mailing DVDs or Blue-Ray discs to its subscribers through the U.S. Postal Service with a postage paid return envelope; and (2) through an instant watch feature which allows Netflix subscribers to stream video content provided by Netflix over the Internet.

3.      Netflix's Internet streaming videos can be viewed by selecting a movie for instant viewing over the Internet on the subscriber's computer or portable computing device such as Apple's iPad.

4.      Netflix's Internet streaming videos can also be viewed on a subscriber's TV or other display through various devices that have been designed or programmed to stream Netflix video content via the Internet.  These devices include, but are not limited to, the XBox 360, Nintendo Wii and the PlayStation 3 video game consoles, the Roku set top box, and certain Netflix ready televisions, DVRs, DVD and Blue-ray players ("NetFlix Ready Devices" or "Netflix Ready Device" when referred to singularly).

CLASS ACTION COMPLAINT FOR VIOLATIONS OF: 1. THE VIDEO PRIVACY PROTECTION ACT, 18 U.S.C. § 2710 *et seq.*; AND 2. CALIFORNIA CIVIL CODE § 1799.3

- 2 -

1    5.    When a subscriber accesses Netflix through a Netflix Ready Device, various

2    categorized lists of videos available for streaming from the Internet which Netflix calls "queues"

3    are automatically displayed on the subscriber's TV or other display.

4    6.    Included among the queues that Netflix automatically displays on the subscriber's

5    TV or other display are: (1) a queue titled "Recently Watched," which lists the latest video titles

6    that were viewed through the subscriber's Netflix Ready Device; (2) a queue titled "Instant

7    Queue," which lists video titles that a subscriber has flagged for future viewing; and (3) various

8    queues that list video titles recommended by Netflix to the subscriber based on personal

9    information collected by Netflix regarding the subscriber's tastes, interests, viewing preferences

10   and/or recently watched streaming videos.

11   7.    By automatically displaying the above referenced queues on its subscribers'

12   viewing screens without providing subscribers with any option or means to delete, edit, hide or

13   otherwise prohibit others from viewing the queues that identify the subscriber's recently watched

14   videos, viewing preferences, tastes and/or interests, Netflix improperly and knowingly discloses

15   the subscribers' personally identifiable information to everyone with access to the subscriber's

16   entertainment center(s) such as the subscriber's spouse, children, parents, other family members,

17   friends, guests, visitors, roommates, and/or housemates, etc.

18   8.    Netflix's automatic disclosure of the streaming video titles viewed by its

19   subscribers and other personally identifiable information of the subscriber to everyone with access

20   to the subscriber's Netflix Ready Device or Devices, is unlawful and constitutes a knowing

21   violation of the VPPA, 18 U.S.C. § 2710 *et seq.*, as set forth in further detail below.

22   **PARTIES**

23   8.    Plaintiff Meghan Mollett is a resident of Lansing, Michigan and is a Netflix

24   subscriber who views streaming videos from Netflix on her TV through a Netflix Ready Device,

25   which has and continues to automatically display to others her personally identifiable information

26   as defined by the VPPA, 18 U.S.C. § 2710 *et seq.*

27   9.    Plaintiff Tracy Hellwig is a resident of Lancaster, California and is a Netflix

28   subscriber who views streaming videos from Netflix on her TV through a Netflix Ready Device,

CLASS ACTION COMPLAINT FOR VIOLATIONS OF: 1. THE VIDEO PRIVACY PROTECTION ACT, 18
U.S.C. § 2710 *et seq.*; AND 2. CALIFORNIA CIVIL CODE § 1799.3

1   which has and continues to automatically display to others her personally identifiable information

2   as defined by the VPPA, 18 U.S.C. § 2710 *et seq.*

3          10.      Defendant Netflix, Inc. is a Delaware corporation which maintains its headquarters

4   at 100 Winchester Circle, Los Gatos, CA 95032. Founded in 1999, Netflix claims to be the

5   world's largest subscription service streaming movies and TV episodes over the Internet and

6   sending DVDs by mail. Netflix claims to have more than 20 million subscribers, mostly in the

7   U.S., and that more than 48% of its subscribers have watched more than 15 minutes of streaming

8   content as of the fourth quarter of 2009. Netflix is a "video tape service provider" regulated by the

9   VPPA, 18 U.S.C. § 2710 *et seq.*, meaning "any person, engaged in the business … of rental, sale,

10  or delivery of prerecorded video cassette tapes or similar audio visual materials." *Id.* at

11  § 2710(a)(4).

### JURISDICTION AND VENUE

12         11.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which

13  confers upon the Court original jurisdiction over all civil actions arising under the laws of the

14  United States, and pursuant to 18 U.S.C. § 2710(c).

15         12.      This Court has jurisdiction over Netflix because a substantial portion of the

16  wrongdoing alleged in this Complaint took place in the State of California and because Netflix has

17  its principal place of business in, and is authorized to do business in, the State of California.

18         13.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Netflix resides

19  in this District, many of the acts and transactions giving rise to this action occurred in this District

20  and because Netflix is subject to personal jurisdiction in this District.

21         14.      **Intradistrict Assignment**:  Pursuant to Civil L.R. 3-5(b) and Civil L.R.

22  3-2(c)&(e), assignment of this action to the San Jose Division is appropriate because Netflix

23  resides in Santa Clara County and many of the acts and transactions giving rise to this action

24  occurred in Santa Clara County.

### FACTUAL ALLEGATIONS

25         15.      Netflix launched in or about 1999 as an on-line DVD rental subscription service

26  that delivers DVD rentals directly to its subscribers through the U.S. mail.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF: 1. THE VIDEO PRIVACY PROTECTION ACT, 18
U.S.C. § 2710 *et seq.*; AND 2. CALIFORNIA CIVIL CODE § 1799.3

16.     Rather than charging its customers on a per DVD basis, Netflix charges a monthly subscription fee which is priced depending on the specific subscription plan the subscriber chooses.

17.     Netflix's subscriber plans historically have varied depending on how many DVDs a subscriber was entitled to have checked out at any given time.  Prior to 2007, Netflix only offered video content on DVDs delivered through the mail.

18.     All Netflix subscribers are required to set up a password protected on-line Netflix account which allows the subscriber to manage in a limited way his or her Netflix account via the Internet.

19.     To order DVDs for home delivery, Netflix subscribers must log on to their Netflix on-line account and create a list of DVDs they want to view, which Netflix refers to as a "queue." Depending on the subscriber's plan, Netflix then mails one or more DVDs to the subscriber based upon the titles listed in the subscriber's queue.  When the subscriber returns a DVD to Netflix in the postage paid mailer/envelope provided by Netflix, Netflix then mails out the next available DVD from the subscriber's DVD queue.

20.     Due to the large number of DVD titles available from Netflix – currently over 100,000 titles – Netflix provides its subscribers with a search feature through their on-line account whereby they can search Netflix's library of DVDs by title, by actor, by director, by genre, etc.

21.     Netflix also uses a proprietary recommendation service that uses predictive software to analyze personal information collected by Netflix from each subscriber through questionnaires, movie ratings or reviews provided by the subscriber and/or the list of DVDs previously viewed by the subscriber to make personalized video recommendations that are unique to each subscriber.

22.     Netflix's personalized DVD recommendations are posted by Netflix in each subscriber's on-line account and are sorted into various queues that are categorized based on the subscriber's taste preferences and/or previously viewed DVDs.

23.     Each queue generally includes the title of each video included in the queue, an image of the DVD cover art for each listed video, a written description of the video content and

CLASS ACTION COMPLAINT FOR VIOLATIONS OF: 1. THE VIDEO PRIVACY PROTECTION ACT, 18 U.S.C. § 2710 *et seq.*; AND 2. CALIFORNIA CIVIL CODE § 1799.3

- 5 -

1  the Motion Picture Association of America ("MPPA") rating for each video.

2      24.   Netflix also provides its subscribers with a complete list of the subscriber's DVD

3  rental history of titles previously shipped to the subscriber.

4      25.   As each subscriber's on-line Netflix account is password protected, the subscriber's

5  personal information therein, including their past DVD rental history, was, and is, generally kept

6  private and secure unless the subscriber decides to share any of their private information with

7  others.

8      26.   In January 2007, Netflix announced that it was rolling out a new feature that would

9  allow subscribers to instantly watch movies, television series and other video content streamed

10  from the Internet on their personal computers and that Netflix intended to broaden the distribution

11  capability of this service to multiple platforms over time.

12      27.   Netflix added this new streaming Internet feature to every subscription plan at no

13  additional cost although Netflix initially placed limits on the number of hours a subscriber could

14  stream Internet videos for viewing on their computer in any given month based on the subscriber's

15  particular DVD plan.

16      28.   In January 2008, Netflix announced that it anticipated developing a set-top box

17  device or other devices in conjunction with consumer electronics manufacturers that would enable

18  Netflix's instant-watching feature to be viewed directly on subscribers' televisions.

19      29.   According to Reed Hastings, Netflix's co-founder and CEO, ever since Netflix

20  began offering streaming videos for viewing on a personal computer in January of 2007, it has

21  been Netflix's goal "to be ubiquitous on whatever device gets the Internet to the TV." *See* Press

22  Release, Netflix, Inc., *Netflix Announces Multiple Partners to Instantly Stream Movies and TV*

23  *Episodes from Netflix to the TV* (January 7, 2010) (*available at* http://netflix.mediaroom.com/

24  index.php?s=43&item=343).

25      30.   While Netflix started off exclusively as a DVD-by-mail rental company, Netflix

26  now primarily considers itself as an Internet streaming video company.  Starting sometime in the

27  last quarter of 2010,  the amount of content viewed by Netflix subscribers streamed over the

28  Internet surpassed the amount of content viewed on DVDs received through the mail, and for the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF: 1. THE VIDEO PRIVACY PROTECTION ACT, 18
U.S.C. § 2710 *et seq.*; AND 2.  CALIFORNIA CIVIL CODE § 1799.3

1   first time Netflix spent more money to acquire streaming content than DVDs. *See* Press Release,

2   Netflix, Inc., *Netflix Launches U.S. Subscription Plan for Streaming Movies & TV Shows over the*

3   *Internet for $7.99 a Month* (November 22, 2010) (*available at* http://netflix.mediaroom.com/

4   index.php?s =43&item=376).

5        31.    Every subscription plan currently offered by Netflix includes the instant watch

6   feature which provides every subscriber with the ability to watch videos streamed over the

7   Internet.

8        32.    Netflix streaming video can currently be watched on a subscriber's TV or other

9   display through a variety of Netflix Ready Devices such as Microsoft's Xbox 360, Nintendo's Wii

10   and Sony's PlayStation 3 video game consoles, an array of Blu-ray disc players, Internet-

11   connected TVs, home theater systems, digital video recorders and Internet video players.

12        33.    In order to activate a Netflix Ready Device, the subscriber must first obtain a code

13   that is outputted by the Netflix Ready Device and then register that code with Netflix via the

14   subscriber's on-line Netflix account.  Once the subscriber's Netflix Ready Device has been

15   activated by Netflix, anyone with access to the subscriber's Netflix Ready Device can view

16   Netflix Internet streamed videos directly on the subscriber's TV or other display.

17        34.    Unlike broadcast television programming, Netflix Internet streaming video service

18   does not offer channels of commercial video programming to choose from.  Instead, Netflix

19   viewers must specifically choose a title they want to watch from the thousands of movies, TV

20   episodes and various other streaming video content offered by Netflix.

21        35.    In order to help subscribers find available Netflix streaming videos of interest to

22   instantly watch on their TVs or other displays, Netflix provides subscribers with an on screen

23   "search by title" feature.

24        36.    Netflix also adopted the queue feature it previously developed for recommending

25   DVDs to its subscribers via their online accounts in order to recommend available streaming video

26   titles to subscribers who watch Netflix on a TV or other display through a Netflix Ready Device.

27        37.    However, in making the transition from being a DVD rental service to also

28   becoming a provider of Internet streaming video content that can be ordered and watched directly

CLASS ACTION COMPLAINT FOR VIOLATIONS OF: 1. THE VIDEO PRIVACY PROTECTION ACT, 18 U.S.C. § 2710 *et seq.*; AND 2. CALIFORNIA CIVIL CODE § 1799.3

- 7 -

1   on a subscriber's TV or other display through a Netflix Ready Device, Netflix no longer limits the

2   display of the subscriber's personal and private information, such as the video titles the subscriber

3   has ordered from Netflix, to the subscriber's on-line account. Instead, Netflix now automatically

4   displays the subscriber's streaming video queues directly onto the subscriber's TV or other

5   display, thereby allowing all who watch Netflix with the subscriber or who otherwise have access

6   to the subscriber's home entertainment center to view the subscriber's private, personally

7   identifiable information contained in the various queues.

8           38.     For example, one of the streaming video queues provided by Netflix and

9   automatically displayed on the subscriber's TV or other display when Netflix is viewed through a

10  Netflix Ready Device is a compilation of streaming videos titles that the subscriber has tagged for

11  later viewing. Netflix refers to this queue as the "Instant Queue". On information and belief, this

12  is the only queue that Netflix allows the subscriber to add or delete video titles from at will.

13          39.     All remaining streaming video queues are compiled by Netflix as opposed to the

14  subscriber, and the subscriber is unable to delete, hide or lock any of those queues or delete any

15  video title listed in such video queues to prevent the disclosure of the subscriber's personally

16  identifiable information to others with access to the subscriber's TV or other display.

17          40.     Another streaming video queue compiled by Netflix and automatically displayed

18  on the subscriber's TV or other display is a queue titled "Recently Watched" that lists the most

19  recent streaming video titles previously viewed through the subscriber's Netflix Ready Device.

20          41.     Netflix also provides queues listing recommended video titles that a subscriber

21  might enjoy based on the list of recently watched videos. These queues are labeled "Like [name

22  of recently viewed title]."

23          42.     Netflix also displays a queue titled "Top Picks for [first name of subscriber]" which

24  lists streaming videos Netflix believes will interest the subscriber based on Netflix's analysis of

25  the subscriber's personal information it has collected.

26          43.     Each of these above-referenced queues contains protected, personally identifiable

27  information and other private information of the subscriber.

28          44.     Netflix has failed to implement appropriate security measures to prevent the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF: 1. THE VIDEO PRIVACY PROTECTION ACT, 18
U.S.C. § 2710 *et seq.*; AND 2. CALIFORNIA CIVIL CODE § 1799.3

disclosure of its subscribers' personally identifiable information to others even though Netflix at all relevant times knew, or should have known, that the viewers of its streaming video on a subscriber's TV or other display would not be limited to Netflix's subscribers, but would include others such as its subscribers' spouses, children, parents, guests, friends, housemates, and/or roommates, etc.

45. Every time a Netflix Ready Device is turned on to view Netflix streaming videos on the subscriber's TV or other display, Netflix automatically displays the various queues compiled by Netflix, including those that disclose personally identifiable information of the subscriber on the subscriber's TV or other display without providing the subscriber the means to restrict others from viewing the subscriber's personally identifiable information.

46. Netflix could easily protect the personally identifiable information of its subscribers by providing its subscribers with the option to delete, hide, edit or lock any queues that disclose any personal information that the subscriber would like to keep private, or by allowing the subscriber to delete certain titles from the queues (like the subscriber is allowed to do in the "Instant Queue") or by simply removing all queues which identify a subscriber's previously watched videos, tastes and/or preferences altogether from the TV or other display and making such queues only available in the subscriber's password-protected on-line account.

47. Netflix's automatic disclosure of its subscribers' recently viewed streaming video titles and other personally identifiable information to everyone with access to the subscribers' Netflix Ready Devices constitutes a knowing violation of the VPPA, 18 U.S.C. § 2710 et seq.

### CLASS ACTION ALLEGATIONS

48. Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class of similarly situated individuals defined as:

> All natural persons residing in the U.S., Puerto Rico and any U.S. territories who subscribed to Netflix and streamed Netflix videos from the Internet to their televisions through any Netflix Ready Device including, but not limited to, the XBox 360, Nintendo Wii, or PlayStation 3 video game consoles, the Roku set top box, any Netflix ready televisions, and/or any Netflix ready DVR, DVD or Blue-ray players at any time from two years prior to the date of the filing of this Complaint through the present (the "Class").

CLASS ACTION COMPLAINT FOR VIOLATIONS OF: 1. THE VIDEO PRIVACY PROTECTION ACT, 18 U.S.C. § 2710 et seq.; AND 2. CALIFORNIA CIVIL CODE § 1799.3

49. Excluded from the Class are Defendant and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; the judges to whom this case is assigned and any immediate family members thereof; and Plaintiffs' counsel and Class counsel. Plaintiffs reserve the right to modify or amend this Class definition, as appropriate.

50. Certification of Plaintiffs' claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

51. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that individual joinder of all Class members is impracticable. Plaintiffs are informed and believe that there are potentially thousands, if not millions, of individuals that stream Netflix videos from the Internet instantly to their TV or other display through a Netflix Ready Device. The precise number of Class members and their addresses are unknown to Plaintiffs, but may be ascertained from Netflix's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

52. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. Personally identifiable information of Class members was compiled by Netflix and disclosed to third parties in violation of federal law. Furthermore, common questions of law and fact, include, without limitation:

    a)    whether Netflix engaged in the conduct as alleged herein;

    b)    whether Netflix's practices violate applicable law;

    c)    whether Plaintiffs and the other members of the Class are entitled to actual, statutory, punitive or other forms of damages, and other monetary relief and, if so, in what amount(s); and

    d)    whether Plaintiffs and the other members of the Class are entitled to

CLASS ACTION COMPLAINT FOR VIOLATIONS OF: 1. THE VIDEO PRIVACY PROTECTION ACT, 18 U.S.C. § 2710 *et seq.*; AND 2. CALIFORNIA CIVIL CODE § 1799.3

- 10 -

1    equitable relief, including but not limited to injunctive relief and

2    restitution.

3    53.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are

4    typical of the claims of the other members of the Class because, among other things, all Class

5    members were comparably injured through the uniform misconduct described above and were

6    subject to Netflix's unwarranted and unauthorized violations of their personal privacy.

7    54.    **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).**

8    Plaintiffs are adequate Class representatives because their interests do not conflict with the

9    interests of the other members of the Class they seek to represent; they have retained counsel

10   competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute

11   this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs

12   and their counsel.

13   55.    **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).**

14   Netflix has acted or refused to act on grounds generally applicable to Plaintiffs and the other

15   members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as

16   described below, with respect to the members of the Class as a whole.

17   56.    **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is

18   superior to any other available means for the fair and efficient adjudication of this controversy,

19   and no unusual difficulties are likely to be encountered in the management of this class action.

20   The damages or other financial detriment suffered by Plaintiffs and the other members of the

21   Class are relatively small compared to the burden and expense that would be required to

22   individually litigate their claims against Netflix, so it would be impracticable for Class members

23   to individually seek redress for Netflix's wrongful conduct. Even if the Class members could

24   afford individual litigation, the court system could not. Individualized litigation creates a

25   potential for inconsistent or contradictory judgments, and increases the delay and expense to all

26   parties and the court system. By contrast, the class action device presents far fewer management

27   difficulties, and provides the benefits of single adjudication, economy of scale, and

28   comprehensive supervision by a single court.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF: 1. THE VIDEO PRIVACY PROTECTION ACT, 18
U.S.C. § 2710 *et seq.*; AND 2. CALIFORNIA CIVIL CODE § 1799.3

**FIRST CAUSE OF ACTION**
Violation of the Video Privacy Protection Act - 18 U.S.C. § 2710 *et seq.*
(On Behalf of Plaintiffs and the Class)

57. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

58. The VPPA prohibits a video tape service provider from knowingly disclosing personally identifiable information of any consumer of such provider to any person except under limited exceptions not applicable here.

59. Netflix is a "video tape service provider" as defined by the VPPA because it is "engaged in the business, in or affecting interstate or foreign commerce, of rental, sale or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

60. Plaintiffs are "consumers," as defined by the VPPA, because each was a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

61. The VPPA defines "personally identifiable information" as that which "identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3).

62. As previously described above, when Netflix Internet streaming videos are viewed on subscribers' TVs or other displays via a Netflix Ready Device, Netflix automatically displays various queues that contain and disclose the subscribers' personally identifiable information such as subscribers' recently watched videos, tastes and preferences.

63. By automatically displaying queues containing personally identifiable information of its subscribers directly on their TVs or other displays without providing subscribers with a way to preclude others from accessing the protected information, Netflix knowingly discloses personally identifiable information of its subscribers to everyone with access to the subscribers' entertainment center such as the subscriber's spouses, children, other relatives, household members, friends, guests, roommates and/or housemates, etc.

64. While the VPPA allows a video tape service provider to disclose personally identifiable information concerning any consumer to that consumer, Netflix knew, or should have

CLASS ACTION COMPLAINT FOR VIOLATIONS OF: 1. THE VIDEO PRIVACY PROTECTION ACT, 18 U.S.C. § 2710 *et seq.*; AND 2. CALIFORNIA CIVIL CODE § 1799.3

known, at all times relevant hereto that the disclosure of its subscribers' personally identifiable information automatically on its subscribers' TVs or other displays every time Netflix is watched through a Netflix Ready Device would not be limited to its subscribers but would also be made to others such a the subscribers' spouses, children, other relatives, household members, friends, guests, roommates and/or housemates, etc.

65.    Netflix markets its instant streaming services as entertainment that subscribers can share with their families, friends and others.  For example, in a press release announcing that Netflix could now be streamed through the Nintendo Wii gaming console, Netflix stated, "The launch of Netflix on Wii gives people the opportunity to gather with friends and family for a movie and game night."  *See* Press Release, Netflix, Inc., *Thousands of Movies & TV Episodes From Netflix Now Available via Nintendo's Wii Console* (April 12, 2010) (*available at* http://netflix.mediaroom.com/index.php?s=43&item=354).

66.    Likewise, many of the images used in Netflix's advertisements for its instant streaming to television service depict social groups of families and/or friends gathered around the TV watching Netflix together as a social unit as opposed to a single subscriber watching Netflix alone (as illustrated in the below picture widely used by Netflix in Internet advertisements).



CLASS ACTION COMPLAINT FOR VIOLATIONS OF:  1. THE  VIDEO  PRIVACY  PROTECTION  ACT,  18 U.S.C. § 2710 *et seq.*; AND 2.  CALIFORNIA CIVIL CODE § 1799.3

1    67.    Netflix's disclosures of its subscribers' personally identifiable information as
2  alleged above:

       a)    were not limited to Netflix's subscribers, but instead were, and
continue to be, knowingly made to others with access to the
subscribers' Netflix Ready Devices;

       b)    were, and continue to be, made without the informed written consent
of the subscribers given at the time the disclosures were sought;

       c)    were, and continue to be, made without Netflix having first provided
subscribers with the opportunity, in a clear and conspicuous manner,
to prohibit such disclosures;

       d)    were not limited to the name and address of the subscribers, failed to
provide subscribers with the opportunity, in a clear and conspicuous
manner, to prohibit such disclosure, and  included the titles and
descriptions of the video material;

       e)    were not made in the "ordinary course of business" which, as
defined by the VPPA (18 U.S.C. § 2710(a)(2)), is limited to "only
debt collection activities, order fulfillment, request processing, and
the transfer of ownership;"

       f)    were not made pursuant to a court order; and

       g)    were not made to a law enforcement agency pursuant to a warrant.

68.    As alleged herein, Netflix has knowingly disclosed and continues to knowingly disclose personally identifiable information of Plaintiffs and class members in violation of the VPPA.

69.    In recent public filings, Netflix has acknowledged that privacy concerns could limit Netflix's ability to leverage its subscribers' data and that the disclosure of or unauthorized access to subscriber data could subject Netflix to litigation and adversely impact Netflix's business and reputation. Specifically Netflix stated that:

> In the ordinary course of business and in particular in connection with providing our personal movie recommendations, we collect and utilize data supplied by our

CLASS ACTION COMPLAINT FOR VIOLATIONS OF: 1. THE VIDEO PRIVACY PROTECTION ACT, 18 U.S.C. § 2710 *et seq.*; AND 2. CALIFORNIA CIVIL CODE § 1799.3

- 14 -

subscribers. We currently face certain legal obligations regarding the manner in which we treat such information. Other businesses have been criticized by privacy groups and governmental bodies for attempts to link personal identities and other information to data collected on the Internet regarding users' browsing and other habits. Increased regulation of data utilization practices, including self-regulation as well as increased enforcement of existing laws, could have an adverse effect on our business. In addition, if unauthorized access to our subscriber data were to occur or if we were to disclose data about our subscribers in a manner that was objectionable to them, our business reputation could be adversely affected, and we could face potential legal claims that could impact our operating results.

*See* Netflix, Inc., Annual Report (Form 10-K) at 16 (Feb. 22, 2010).

70.     Despite the VPPA's strict prohibition against the disclosure of personally identifiable information and Netflix's knowledge that improper disclosure of its subscribers' private information could subject Netflix to legal claims and impact its operating results, Netflix's privacy policy does not even address the disclosure of information that identifies a subscriber as having requested or obtained specific video materials or services from Netflix.

71.     For example, Netflix's Privacy Policy only addresses personal information which Netflix defines as "... information that can be used to identify and contact you, specifically your name, postal delivery address, e-mail address, payment method (e.g., credit card, debit card, or other payment method accepted on our website) and telephone number, as well as other information when such information is combined with your personal information." *See Privacy Policy*, Netflix, Inc. (last updated on September 24, 2010) http://www.netflix.com/PrivacyPolicy.

72.     Plaintiffs and members of the Class have suffered harm as a result of Netflix's violations of the VPPA.

73.     The VPPA provides that "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person," who "may bring a civil action in a United States district court." 18 U.S.C. § 2710(b)(1)&(c)(1).  The court may award:

"(A) actual damages but not less than liquidated damages in an amount of $2,500;

(B) punitive damages;

(C) reasonable attorneys' fees and other litigation costs reasonably incurred; and

(D) such other preliminary and equitable relief as the court determines to be appropriate." 18 U.S.C. § 2710(c)(2).

CLASS ACTION COMPLAINT FOR VIOLATIONS OF: 1. THE VIDEO PRIVACY PROTECTION ACT, 18 U.S.C. § 2710 *et seq.*; AND 2. CALIFORNIA CIVIL CODE § 1799.3

- 15 -

74.     Pursuant to 18 U.S.C. § 2710, Plaintiffs and the other members of the Class are entitled to actual damages, but no less than liquidated damages in the amount of $2,500 for each aggrieved Plaintiff or Class member, punitive damages, costs and reasonable attorneys' fees and such other preliminary and equitable or declaratory relief as may be appropriate.

## SECOND CAUSE OF ACTION
### Violation of California Civil Code § 1799.3
### (On Behalf of Plaintiffs and the Class)

75.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

76.     California Civil Code § 1799.3(a) provides: "No person providing video recording sales or rental services shall disclose any personal information or the contents of any record, including sales or rental information, which is prepared or maintained by that person, to any person, other than the individual who is the subject of the record, without the written consent of that individual."

77.     None of the exemptions provided by California Civil Code § 1799.3(b) apply.

78.     California Civil Code § 1799.3(c) provides, "Any willful violation of this section shall be subject to a civil penalty not to exceed five hundred dollars ($500) for each violation, which may be recovered in a civil action brought by the person who is the subject of the records."

79.     California Civil Code § 1799.3(e) provides that "[t]he penalty provided by this section is not an exclusive remedy, and does not affect any other relief or remedy provided by law." Therefore, in addition to the relief provided by the VPPA, Plaintiffs and the other members of the Class are entitled to recover a civil penalty of $500 for each violation.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, respectfully request:

A.     the Court certify the Class pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), and adjudge Plaintiffs to be adequate representatives thereof;

B.     the Court enter an Order requiring Defendant to pay Plaintiffs' and the other Class members' actual damages (including multiple damages) or statutory damages, whichever is greater, and civil penalties;

CLASS ACTION COMPLAINT FOR VIOLATIONS OF: 1. THE VIDEO PRIVACY PROTECTION ACT, 18 U.S.C. § 2710 *et seq.*; AND 2. CALIFORNIA CIVIL CODE § 1799.3

1        C.     the Court enter an Order requiring Defendant to pay Plaintiffs and the other Class

2  members punitive damages;

3        D.     the Court enter an Order awarding declaratory and injunctive relief as permitted by

4  law or equity, including: enjoining Defendant from continuing the unlawful practices set forth

5  above; directing Defendant to modify its queues displayed on its subscribers' TVs or other

6  displays through Netflix Ready Devices so that its subscribers' personally identifiable information

7  is no longer automatically displayed on the subscribers' TVs or other displays or by otherwise

8  allowing subscribers to control what personally identifiable information, if any, is displayed;

9        E.     the Court enter an Order awarding Plaintiffs and the other members of the Class

10  their expenses and costs of suit, including reasonable attorneys' fees, to the extent provided by

11  law; and

12        F.     for such other relief as may be just and proper.

### JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

DATED: April 4, 2011

WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
FRANCIS M. GREGOREK
BETSY C. MANIFOLD
RACHELE R. RICKERT
PATRICK H. MORAN

_FRANCIS M. GREGOREK_

750 B Street, Suite 2770
San Diego, California 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599
gregorek@whafh.com
manifold@whafh.com
rickert@whafh.com
moran@whafh.com

Attorneys for Plaintiffs

WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLC

CLASS ACTION COMPLAINT FOR VIOLATIONS OF: 1. THE VIDEO PRIVACY PROTECTION ACT, 18 U.S.C. § 2710 *et seq.*; AND 2. CALIFORNIA CIVIL CODE § 1799.3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MARY JANE FAIT
THEODORE BELL
55 West Monroe Street, Suite 1111
Chicago, Illinois  60603
Telephone:  312/984-0000
Facsimile:  312/984-0001
fait@whafh.com
tbell@whafh.com

Attorneys for Plaintiffs

NETFLIX:17998.CPT.v2

CLASS ACTION COMPLAINT FOR VIOLATIONS OF: 1. THE  VIDEO  PRIVACY  PROTECTION  ACT,  18
U.S.C. § 2710 *et seq.*; AND 2.  CALIFORNIA CIVIL CODE § 1799.3